# CLARA BENSON v. ALBERT LEA STATE BANK, BY A. J. VEIGEL.[1]

March 24, 1932.

No. 28,822.

D. F. *Nordstrom* and J. O. *Peterson,* for appellant.

A. W. *Johnson* and *Meighen, Knudson & Sturtz,* for respondent.

WILSON, C. J.

Defendant appealed from an order denying a motion for a new trial.

The Albert Lea State Bank maintained an active trust department under the enlarged power conferred by L. 1923, p. 366, c. 274, G. S. 1923 (2 Mason, 1927) §§ 7661–7668. It deposited securities with the commissioner of banks as required by law to safeguard its trusts. One Erickson, the president of the bank, was the trust officer. The bank closed September 18, 1929.

[1]Reported in 241 N. W. 794.

542

In 1927 plaintiff, a widow with limited business experience, and her 15-year old daughter moved to Albert Lea from Lincoln county, where Mr. Benson had then recently died intestate leaving them some property. Mrs. Benson and her daughter called at the bank and asked if the bank would take care of their business. They were referred to Erickson, who arranged with them for the trust department to care for their business. It was appointed guardian of the estate of the daughter. The property consisted principally of securities, mortgages, notes, farm lands, farm products, and rentals. The bank liquidated most of such assets. We are now concerned with Mrs. Benson's one-third thereof only. The bank received from her $3,553.73 and accounted for but $1,661.82, leaving $1,891.91, for which she now seeks a preferred claim. The only controversy is whether the claim is preferred or general. When Mrs. Benson took cashier checks or drafts to the bank Erickson had her indorse them in blank. When she wanted money other than from a checking account in the bank, which had no connection with the matters herein stated, she went to Erickson, who had her sign slips of paper, which he told her was a more convenient way of handling things for the bank. These slips turned out to be promissory notes. Indeed, such notes were from time to time honored in the commercial department. No interest was charged. They were stamped and entered as paid but never returned to her. They were met by the money in the trust funds. The bank handled her property without consulting her. In fact no record was kept on the books of the bank. The requirement of the statute as to separate books of account for a trust fund was flagrantly violated. Indeed, other trusts in the bank were handled in the same careless and illegal manner. Mrs. Benson's repeated requests for an accounting or statement of her affairs were ignored, and she was disarmed by excuses for delay because of urgent business, etc. She was told that the bank would handle her business through its trust department. She relied thereon. She was assured from time to time that this was being done. She dealt with Erickson only as the trust officer.

When the bank closed it developed that the bank had not kept the trust funds intact, and indeed the bank books did not show its existence, nor did the books of the bank show plaintiff to be a creditor in any form. Plaintiff knew nothing of the internal affairs of the bank. It would seem that the money had been misappropriated. It is sufficient to point to G. S. 1923 (2 Mason, 1927) § 7664, a portion of which is as follows:

"Besides its general books of account, it shall keep separate books of account for all trust accounts. All funds and property held by it in a trust capacity shall at all times be kept separate from its own funds and property, and all trust funds deposited or held in trust by the bank awaiting investment shall be carried in a separate account, and shall not be used by the bank in the conduct of its business, and all deposits made by it of such trust funds in any other banking institutions shall be deposited as trust funds, to its credit as trustee, and not otherwise."

The foregoing statute is stringent and forbids the use of the trust funds by the bank in the conduct of its business. It was the duty of the bank to hold these uninvested funds separately and intact awaiting investment. It failed in its obligation. Plaintiff cannot thus be deprived of her rights under the law, which was enacted for her protection. Had the bank obeyed the law, plaintiff would have been entitled to her money without loss. She should not suffer by the want of fidelity on the part of the bank whose official misappropriated her money.

Affirmed.